WIMBERLY *v.* ROAD IMPROVEMENT DISTRICT No. 7.

## Opinion delivered November 12, 1923.

1.  CONSTITUTIONAL LAW—CONSTRUCTION RENDERING ACT VALID.—A construction of an act which would invalidate it should not be adopted if some other construction could be placed upon it, not inconsistent with any of its parts, which would enable it to take effect.

2.  HIGHWAYS—AUTHORITY TO COMMISSIONERS TO CHANGE ROUTE.—The act of special session of 1920, No. 312, creating Special Road Improvement District No. 7, in Polk County, by providing in section two that the road should follow, "as near as practical, what is known as the Mena-Cherry Hill public road," authorized only immaterial changes in the road by the commissioners, and therefore did not encroach upon the exclusive jurisdiction of the county court.

3.  HIGHWAYS—PRIVATE LETTING OF BRIDGE CONTRACTS.—Constitution, art. 19, § 16, inhibiting the expenditure of county funds for bridges except under contracts to the lowest bidder, applies only to the expenditure of county funds, and does not invalidate the act of special session of 1920, No. 312, authorizing the commissioners of Special Road Improvement District No. 7, in Polk County, to let bridge contracts without advertising for bids.

4.  CONSTITUTIONAL LAW—DUE PROCESS—REVIEW OF ASSESSMENTS.— Acts of 1920, No. 312, creating Special Road Improvement District No. 7 in Polk County, *held* not to authorize taking of property without due process in that no appeal from assessment is provided for, where section 10 of such act provides that any person may "apply to any court of competent jurisdiction to set aside assessment list or to correct any void or erroneous assessment."

5.  CONSTITUTIONAL LAW—DUE PROCESS—NOTICE OF REVISED ASSESS-MENTS.—Acts 1920, No. 312, creating Special Road Improvement District No. 7, in Polk County, *held* not to authorize, in section 11, relating to revision of assessments, the taking of property without due process of law, in that no notice of such revision to the property owners is provided for, since section ten, providing for publication of notices of assessment, necessarily applies to revised as well as original assessment.

6.  HIGHWAYS—CONTINUANCE OF BOARD FOR MAINTENANCE.—Acts 1920, No. 312, creating Special Road Improvement District No. 7, in Polk County, is not invalid because it continues the board of commissioners for the purpose of repairing and maintaining the road after completion.

7. HIGHWAYS—ATTACK ON ASSESSMENTS—TIME.—In an action to enjoin the commissioners of a road improvement district from constructing the improvement, brought before the day fixed in the notice of the assessors for hearing of complaint against the assessment of benefits, attacks on such assessments cannot be heard, but should be presented by the property owners at the time and place designated.

Appeal from Polk Chancery Court; *James D. Shaver,* Chancellor; reversed in part.

*Norwood & Alley,* for appellant.

The act is unconstitutional and void. It does not make any provision for the approval by the county court of changes that may be made. 130 Ark. 507; 138 Ark. 549; 139 Ark. 277; 142 Ark. 52; 143 Ark. 203; 141 Ark. 247; 147 Ark. 469; 148 Ark. 365; 86 Ark. 231. Section 2 of the act as to building bridges is contrary to the Constitution, art. 19, § 16. Said section did not provide any plan for letting the contract to the lowest and best bidder. 54 Ark. 645. The act does not expressly or by implication require that a proper assessment be made. An assessment made on the wrong basis is tantamount to no assessment at all. 153 Ark. 587; 127 Ark. 310; 86 Ark. 1. The question of benefits is a question of fact. The location and surface conditions of the lands are matters to be considered in assessing the land. 141 Ark. 254. Section 11 of the act is unconstitutional because it makes no provision for notice to be given where revision is made by the county court. 240 U. S. 624; 16 Atl. 506; 174 U. S. 168; 60 Mo. 351; 121 Pac. 1094; 48 S. E. 464. The act is in conflict with art. 7, § 28, of the Constitution because it authorizes the commissioners to keep in repair and maintain the improvements and make all necessary contracts for that purpose.

*Minor Pipkin,* for appellee.

The act is constitutional. It is a rule of construction that the expression of one thing sometimes implies the exclusion of another. 38 Ark. 205. In construing a statute, the meaning must be gathered from the whole act. 31 Ark. 199; 102 Ark. 205. Courts should

give to a statute such a construction, if possible, as will enable it to take effect.  63 Ark. 576.  It is the duty of courts to seek to ascertain and carry out the intention of the Legislature in its enactment, and to give full effect to such intention.  69 Ark. 376.  Article 19, § 16, of the Constitution requiring bridges to be let publicly has no application to the letting of bridges by improvement districts.  As to the assessment of benefits, the statute provides a remedy by appeal, and the chancery court had no jurisdiction to consider this part of the complaint, and properly dismissed it.  The board adopted a standard calculated to produce approximately correct results. Section 10 of the act provides for ample notice of assessment of benefits.  The statement of the complaint that the cost of the improvement is confiscatory is nothing more than a conclusion, not supported by statement of particulars upon which the conclusion is based.  144 Ark. 632.

HUMPHREYS, J.  Appellants, real estate owners in Special Road Improvement District No. 7, in Polk County, instituted this suit against appellees in the chancery court of said county to prevent the commissioners from constructing the improvement.  The district was created by Special Act No. 312 of the General Assembly for the year 1920. The basis of the injunction proceeding is the alleged invalidity of the act creating the district and the assessment of benefits made thereunder.

The constitutionality of the act is questioned; first, because no provision was made therein for the approval by the county court of changes that might be made in the route; second, because the act did not make provision for the construction of the bridges to be let to the lowest responsible bidder; third, because the effect thereof was to take property without due process of law; and fourth, because the commissioners were authorized to maintain the road after being built, and to make contracts for that purpose.

The validity of assessments is assailed, first, on account of the basis adopted in making them; and second, because arbitrary and confiscatory.

Appellees filed an answer denying all the material allegations of the bill for injunction, and the cause was presented for hearing upon the pleadings and testimony of G. L. Clement, one of the assessors for the district, whose testimony was agreed to as facts in the case and incorporated in the decree. The trial resulted in upholding the validity of the act, but enjoining the commissioners from making the improvement without advertising for bids, as being contrary to public policy. Both appellants and appellees have prosecuted an appeal from the decree in so far as same is adverse to them, and the cause is before this court for trial *de novo.* For convenience we have followed, and will continue to follow, the style of the case by referring to the property owners as appellants and to the district and commissioners as appellees.

We first proceed to a consideration and determination of the several attacks made upon the constitutionality of the act in the order set forth in our statement of the case. The principal attack is made upon section 2 thereof, which is as follows:

"Said district is hereby organized for the purpose of building, improving and maintaining the public road in Polk County, Arkansas, beginning near what is known as the Waltman place, or near the section line between sections nine and sixteen, township 2 south, range 30 west, thence in an easterly direction to the Montgomery County line, following as near as practicable what is known as the Mena-Cherry Hill public road. The said public highway extends to Ink, Egger, and thence to the Montgomery line. (Then follow the numbers of the townships through which it runs). Said highway is to be constructed of macadam or of such other materials as the commissioners deem best, or the same may be improved as, in the judgment of the commissioners, is best,

without rebuilding all the way, and they are authorized to build such bridges and culverts as they may find desirable. Any bridges built shall be built and approved by the county court. In building and improving said highway, the commissioners may proceed by letting the work as a whole, or in sections, or they may build same, or a fractional thereof, by day labor, or they may use county and State convicts as may be conceded them by the State or by Polk County. In case bids are advertised for, the commissioners shall have the right to accept or reject any bid.''

(1) Appellants interpret § 2 of the act as giving permission to the commissioners of the road to materially deviate from the Mena-Cherry Hill public road, designated in the act as the route to be improved, and to construct a private road in part, which would impair the jurisdiction of the county court over same after completion for purposes of maintenance, etc., in violation of article 7, § 28 of the Constitution of 1874. This interpretation is placed upon the act because the commissioners are directed to follow as near as practicable what is known as the Mena-Cherry Hill public road in constructing the improvements between the points designated. This construction of the act would invalidate it, and should not be adopted if some other construction can be placed upon it, not inconsistent with any of its parts, which would enable it to take effect. *Wells Fargo & Co.* v. *Crawford County,* 63 Ark. 576; *St. L. I. M. & S. R. Co.* v. *State,* 102 Ark. 205. Effect may be given to each part of the act, and to the act as a whole, without creating any inconsistency between the parts, by construing it to mean that authority is vested in the commissioners to improve the Mena-Cherry Hill public road, making only immaterial changes in the route thereof. The Legislature could confer this authority without encroaching upon the exclusive jurisdiction of the county court over public roads, and a careful reading of the whole act indicates that this was the intention of the Legislature. Of course, under this

construction of the act, material changes cannot be made in the route unless made by an order of the county court. *Bennett* v. *Johnson,* 130 Ark. 507; *Sallee* v. *Dalton,* 138 Ark. 549; *Summers* v. *Damascus Road Dist.,* 139 Ark. 227; *Easley* v. *Patterson,* 142 Ark. 52.

(2)    The act provides for a private letting by the commissioners of a contract to build the bridges, and, for this reason, appellants insist that it is in conflict with § 16, article 19, of the Constitution of 1874, which in part is as follows:

"All contracts for erecting  or  repairing  public buildings or bridges in any county, or for material therefor,  * * *  shall be given to the lowest responsible bidder, under such regulations as may be provided by law."

The language used in the act conferring authority upon the commissioners to build bridges has been construed by this court to mean bridges incident to the improvement or necessary appurtenances thereto (*Van Dyke* v. *Mack,* 139 Ark. 524; *Bullock* v. *Dermott-Collins Rd. Imp. Dist.,* 155  Ark.  176), so they are district improvements and not county improvements in the sense of being built with county funds. The section of the Constitution referred to is a limitation upon the expenditure of county funds for bridges, etc., in any county, and was not intended as an inhibition against districts building bridges incident to the main improvement, by private contract.

(3).    The effect of the act is not to take property without due process of law, as contended by appellants. They argue that, because no provision is made for an appeal, their property is taken without due process of law.   Ample provision is made in the act itself for a judicial review of the assessments made by the board  of assessors. Section 10 of the act is, in part, as follows: "Any person, firm or corporation aggrieved by the action of the board of assessors fixing the assessment list, as herein provided, shall have the right for twenty days from the adjournment of said board of assessors

sitting as a board of equalization, as before said, to apply to any court of competent jurisdiction to set aside assessment list, or to correct any void or erroneous assessments, and, after the expiration of twenty days, the said list shall become final and incontestable either in law or equity."

Appellants also argue that, because no provision is made in § 11 for notice to them when assessments are revised by the assessors, their property is being taken without due process of law. Section 10 of the act provides that assessors shall make assessments of benefits when directed to do so by the commissioners, and, when such assessments are made, shall place same in the hands of the president of the board of commissioners, who shall thereupon cause notice to be published. This requirement in § 10 necessarily applies to revised as well as original assessments. As the notice provided for in § 10 applies to all assessments, we think it unnecessary to have repeated the direction for notice in § 11.

(4) The act is not void because it contained a provision continuing the board of commissioners for the purpose of repairing and maintaining the road after the completion thereof. This precise question was before the court in the case of *Dickinson* v. *Reeder,* 143 Ark. 228, and was decided adversely to the contention of appellants. The court said, in that case, "that maintenance is, after all, a local improvement, and is done for the betterment of the contiguous lands, and it does not interfere with the general authority of the county court over public roads. The two powers go hand in hand, that of the county court being superior in event of possible conflict. It is a mere choice in the form of the legislation as to whether the authority to maintain the road shall be embraced in the same statute and conferred upon the same agency as that which concerns the original improvement, and in neither case is the jurisdiction of the county court invaded." See also *Van Hook* v. *Wallace,* 143 Ark. 203.

We next come to a consideration of the attack made upon the assessments of benefits. Ample provision is made in the act to defend against assessments upon all the grounds made the basis of attack in this proceeding. This suit was brought before the day fixed in the notice for the assessors to meet and hear complaints against the assessment of benefits. The property owner should appear at the time and place designated to show that his property is not benefited, or that the tax amounts to a confiscation thereof. *Bush* v. *Delta Road Imp. Dist.,* 141 Ark. 247; *Van Hook* v. *Wallace, supra.*

The decree is affirmed, except in so far as it enjoined the commissioners from awarding any contract for the construction of the improvement, including bridges. In that particular it is reversed, and remanded with direction to dismiss the bill for injunction.

### DISSENTING OPINION.

HART, J. While I am still of the opinion that, in regard to the specific subject of county bridges, the duties relating to them are laid upon the county court, under art. 7, § 28, of the Constitution of 1874, so that, in making contracts for bridges and in all proceedings relative to the same, the county court alone is the representative of the county, I do not think our former holding to the effect that county bridges may be included in road improvement districts warrants the further holding that contracts for the construction of them may be let privately.

Section 16, art. 19, of the Constitution provides that all contracts for erecting or repairing public buildings or bridges in any county, or for materials therefor, shall be given to the lowest responsible bidder, under such regulations as may be provided by law.

I am of the opinion that this clause of the Constitution refers to bridges across running streams and watercourses, and not to the ordinary culverts in the public roads for surface drainage. The constitutional provision was designed to secure economy in the line of

the public improvements to which it relates, and to secure competitive bidding upon equal terms, to the end that extravagance and collusion between the officers authorized to construct the bridges and the bidders may be prevented. *Fones Hardware Co.* v. *Erb,* 54 Ark. 645. See also *Woodruff* v. *Berry,* 40 Ark. 251, where it was held that contracts for public printing must be let in conformity with the statute.

It is a well settled rule that public officers cannot do by indirection that which they might not do directly. There is nothing in the section of the Constitution above referred to to exclude bridges which form a part of an improvement district from the provision of the section of the Constitution.

The restriction and prohibition of the Constitution against letting contracts for building county bridges privately are of no avail if they can be brought to naught by the indirect action of building bridges by private contract by improvement district methods. There is no more reason why the county court should be forbidden to build a county bridge at private contract out of the general road taxes than that the commissioners of road improvement districts should be allowed to do so out of the taxes collected from the lands forming the improvement districts. The inhibition of the Constitution is not directed against the county judge particularly, but it is directed against the method of building county bridges except upon competitive bidding.

Judge WOOD authorizes me to state that he joins with me in this dissent.